# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 2:21 cr 0085 |
| | ) | ELECTRONICALLY FILED |
| v. | ) | |
| | ) | |
| Donald Vargo, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM AND MOTION FOR VARIANCE
## FROM THE APPLICABLE SENTENCING GUIDELINE RANGE

COMES NOW Donald E. Vargo, by and through counsel, Christopher M. Capozzi, Esquire, pursuant to 18 U.S.C. § 3553, the United States Sentencing Guidelines, and Federal Rules of Criminal Procedure 32 and 47 and submits this *Sentencing Memorandum and Motion for Variance from the Applicable Sentencing Guideline Range* and states in support thereof as follows:

While Donnie Vargo is an addict and has committed crimes in the throes of and to support his addiction, he is not a remorseless criminal, and when he is not using he does not commit crime. He is a loving father, loyal boyfriend, talented and hardworking tradesman, a good employer and a taxpayer.

> I know without a shadow of a doubt that the sober Donny would never do any of the things the drug addict Donny would do and has done. Sober, Donny is a dependable, honest, kind, hardworking, and dedicated human being. He is talented in the art of concrete and has a reputation for being one of the best in the area. He has done work here at my home and, even when not being paid to do the work, he works hard and wants the work done right. He is also a helper when it comes to his work. He provides employment to people trying to get on their feet and helps to educate/train these people, so that they can have a career in concrete and provide for themselves and their families. He is a leader in his field and really tries to be a reputable businessman.

*Erin Stiffler, Long-Time Girlfriend (Exhibit "A")*

> I cannot pinpoint when the change occurred, but several years ago Don reached out to me, and I could tell that something was different. He was more focused on his recovery. He was wanting to reconnect with his family, particularly his children. Don has always been a talented concrete finisher and he began operating his own business at this time. He was doing really good work and was in demand. He was also reconnecting with his children, and he brought his son to meet me. We were speaking on the phone on a regular basis, and we would even go out to lunch on occasion. Don seemed to be doing well yet he was also cognizant that he had an addiction that he continued to battle.

> Don has relapsed during the recovery process. However, even though he fails on occasion, when he does, he acknowledges his shortcomings and gets back to living a sober life. Don is a changed man. When he was younger, I did not see any desire in him to lead a clean and sober life. I had no hope that he would ever be a productive member of society. I was wrong. He has shown me that he has the desire and the ability to shed the yolk of addiction.

*Michael E. Jewart, Cousin – Attorney (Exhibit "B")*

Mr. Vargo is requesting – on the grounds and for the reasons stated below – that the Court vary two levels downward from the applicable sentencing guideline range of 4-10 months [Zone B] to 0-6 months [Zone A] and sentence him to a period

of probation with conditions, including continued sobriety and treatment, and community service.

### A.   *The Sentencing Process.*

A District Court must follow a three-step process when determining what sentence to impose on a defendant:

> (1) calculate the applicable Sentencing Guideline;
>
> (2) formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guideline's calculation; and take into consideration our Circuit's pre-*Booker* case law, which continues to have advisory force; and,
>
> (3) consider the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 327, 347 (3rd Cir. 2006) (internal quotation marks and citations omitted). Federal district courts have wide discretion in sentencing and have the authority to impose a sentence outside of the applicable guideline range. *United States v. Booker* 543 U.S. 220 (2005) and *United States v. Kimbrough*, 552 U.S. 85 (2007). The sentencing court

> may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be

3

> supported by a more significant justification than a minor one.

*Gall v. United States*, 552 U.S. 38, 50 (2007).  A sentencing court is vested with the authority to impose any lawful sentence so long as the "[r]ecord as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier,* 475 F.3d 556, 571 (3d Cir. 2007) (*en banc*).

There is no dispute that the United States Probation Office and the Court correctly calculated the sentencing guideline range at 4 – 10 months (Criminal History Category V and Final Offense Level 4). Accordingly, the remaining issues are the degree to which a departure is warranted under a relevant provision of the sentencing guidelines and whether a variance based on one or more factors outlined in 18 U.S.C. § 3553 is appropriate.

    B.    ***Personal Background and History***

Mr. Vargo has struggled with addiction for most of his life and comes from a family with addiction issues. *PSIR 72-75* and *Exhibit "B"*. He is currently in the early stages of a stable recovery having successfully completed an in-patient stay at the Oil Region Inpatient Recovery Program (*Exhibit "C"* and *PSIR Addendum* (ECF 26)), residing in a three-quarter house, and regular participation in a 12-step program (*Exhibit "D"*). His current sponsor, Robert Murtha, who has known him since 2006, explained:

> I . . . have been sponsoring Donnie, and I have never witnessed him trying to work a twelve step program like he is currently, and that gives me a lot of hope because I know if he continues he will be fine. I spend a good bit of time with him, and he knows I do not hang out with people in active addiction, but all of my friends are in recovery. He has shown that he wants to live a more positive life to me, He is a hard worker and always willing to help people out this is the best Donnie I have ever seen he is important to me, and I hope to continue having him as a friend when he is clean and sober he is just a great person. I will close in saying I do not let too many people come to my house due to many people in addiction not being trustworthy, but he has earned my trust and my families [sic] trust.

*Exhibit E*. Mr. Vargo since his release from the Oil Region Recover Center has committed to achieving a long-term stable recovery and to this end generally attends the following 12-step meetings and a counseling session each week.

| Day | Hours | Name | Location |
|---|---|---|---|
| Monday | 8 – 9 pm | Evans City | Evans City, PA |
| Tuesday | 7 – 8 pm | Care Center (COUNSELING) | Butler, PA |
| Wednesday | 7:30 – 8:30 pm | Mercer Road Big Book Study | Butler, PA |
| Thursday | 8 – 9 pm | Deshon (HOME GROUP) | Butler Township, PA |
| Friday | 7:30 – 8:30 pm | Friday Night Solutions | Butler, PA |
| Saturday | 7 – 8 pm | Red Door | Butler, PA |

To be clear his Tuesday night appointment is voluntary one-on-one counseling at the Care Center. *PSIR 74*. This represents a genuinely dedicated effort to heal through a stable long-term recovery.

Mr. Vargo is also a father of three children, two of whom are adults (a son and a daughter), and a toddler who recently celebrated her first birthday. He works with his adult son and, as he explains it, works every day on repairing and improving his relationship with him; he has occasional contact with his adult daughter and is hopeful that he will one day be able to establish a closer relationship with her. He is devoted to his infant daughter and spends every Sunday with her and her mother (his girlfriend). *Exhibits "A" and "E"*. He also has a deep and meaningful relationship with Erin, his girlfriend. *Exhibit "A"*.

Mr. Vargo is an experienced, talented and hardworking tradesman, operating his own concrete business, where he regularly employs his son and others as laborers. *PSIR 78-81* and *83* and *Exhibits "F1" and "F2"*. He prides himself on doing good work, and completing the job on time and on budget, and he recently met with two potential customers, a home builder and a nursing home operator, about handling their concrete work.

    C.    **Specific Grounds for a Departure or Variance**

        1.    *Mr. Vargo did not depend on crime for his livelihood.*

Mr. Vargo is a talented and hardworking tradesman. Exhibits "A", "B", "F1" and "F2". He has never depended on crime (burglary, drug trafficking, theft, robbery and the like) to pay for housing, food or other daily living expenses, but has instead committed crimes when using in order to support his habit. "The degree to which a

6

defendant depends upon criminal activity for a livelihood is relevant in determining the appropriate sentence." U.S.S.G. § 5H1.9. Because he did not depend on criminal activity to support himself the Court may consider as grounds for a downward departure or variance.

        2.    *Mr. Vargo's Post-Offense Efforts at Rehabilitation*.

The root of Mr. Vargo's crime in this case, as well as his other crimes and arrests which did not result in conviction, is addiction. He has struggled to maintain his sobriety for many years but, and this key, in the past year has made extraordinary and truly successful efforts in support of his sobriety, and now appears to be on the right path. Accordingly, he should be accorded some credit for post-offense rehabilitation. Post-offense and post-sentencing rehabilitation evidence may be highly relevant to several section 3553(a) factors, and may provide the most up-to-date picture of the defendant's "history and characteristics" and the likelihood of engaging in future criminal conduct. *See Gall*, 552 U.S. at 38 (recognizing post-offense rehabilitation as legitimate grounds for a variance from the Sentencing Guidelines); and *Pepper v. United States*, 562 U.S. 476, 492 (2011)("Pepper's steady employment, as well as his successful completion of a 500–hour drug treatment program and his drug-free condition, also suggest a diminished need for "educational or vocational training ... or other correctional treatment" provide legitimate grounds for a post-sentence variance from the Sentencing Guidelines.)

> "Post-offense rehabilitation efforts, including those which occur *post-conviction,* may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." These rehabilitation efforts must be remarkable, "indicate real, positive behavioral change," and demonstrate the defendant's "commitment to repair and rebuild" his or her life.

*United States v. Yeaman*, 248 F.3d 223, 227–28 (3d Cir. 2001) (*citing United States v. Sally*, 116 F.3d 76 (3d Cir. 1997).

First, since committing himself to a sober lifestyle in mid-2020, shortly after his last arrest, Mr. Vargo has remained crime free but, unfortunately, not completely sober. It is notable, however, that while the offenses in this case (December 23, 2016, and December 27, 2016) were not his last offenses they were the last offenses for which he incurred convictions:

| Date | Offense Alleged | Location | Resolution |
|---|---|---|---|
| 02/03/2017 | Possession of Incapacitation Device | Butler, PA | Dismissed 10/26/2017 |
| 03/31/2018 | Simple Assault | Butler, PA | Dismissed 05/07/2018 |
| 06/06/2018 | Unlawful Congregation | Butler, PA | Withdrawn 10/16/2018 |
| 07/07/2019 | Harassment | Butler, PA | Dismissed 08/27/2019 |
| 10/06/2019 | Possession | Butler, PA | Dismissed 06/04/2020 |
| 10/29/2019 | Receiving Stolen Property Access Device fraud | Butler, PA | *Nolle Prossed* 02/05/2021 |
| 05/18/2020 | Theft by Failure to Make Required Disposition | Butler, PA | Withdrawn 09/14/2020 |

PSIR 55-61 and Bond Report.

Second, early this past spring (with encouragement and help from his girlfriend and son) Mr. Vargo embraced that he could not achieve lasting sobriety without help and he entered an in-patient program. After successfully completing this in-patient program he moved into a "sober living" house in Butler, PA and developed the meeting and counseling rotation outlined above. These may seem like baby steps from the outside but for someone who has been using and abusing drugs for 35 years they are – in fact – great leaps.

Third, Erin Stiffler, Michael Jewart and Robert Murtha, people who have known Mr. Vargo for years and know him well, illustrate what is capable of and are a testament to his commitment to sobriety, family, work and carrying-on an ordinary law-abiding lifestyle. Mr. Vargo's progress – given where he came from, where he has been and where he was heading – are extraordinary and unusual.

D.   *The 18 U.S.C. § 3553 Factors*

The 18 U.S.C. § 3553 factors demonstrate in their totality that a sentence of probation with conditions is sufficient but not greater than necessary. The United States Code provides that the District Court shall:

> impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for [the] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued] by the Sentencing Commission pursuant to section 994(a)(1) of title 28;

(5)   any pertinent policy statement [issued] by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*First Factor*. The offense at issue has two distinct characteristics: it was one of opportunity (easy to commit); and it rings of genuine desperation. There was no long-term planning or thought to its commission, in fact I imagine it sent something

like this: "I want drugs. Drugs cost money. There is sometimes money or something else of value in the mail. I will grab some mail to see if there is something there." As it relates to Mr. Vargo's personal background and history, it is fully developed in the Pre-Sentence Investigation Report, in the introduction and Sections B and C above and the exhibits hereto.

*Second Factor*. The offense is a serious one but it does not involve actual or attempted violence, controlled substances, possession of or trafficking firearms, large-scale theft, distribution of drugs, or breach of fiduciary or professional duties, all offenses which commonly result in substantial and irreparable harm to individuals and businesses. Second, a sentence of incarceration would not promote respect for the law or represent just punishment for the offense, instead it would likely result in a counterproductive interruption in a successful five month recovery and cause difficulties for his family, employees and customers.[1] It would also impact Mr. Vargo's current living situation, routine (meetings, counseling, visits with his girlfriend and daughter) and ability to work. It would likely be devastating to him economically, emotionally and in terms of his sobriety, impair a carefully

---

[1] Even community confinement at a half-way house (like the Renewal Center) or home confinement would be counter-productive. At the Renewal Center, Mr. Vargo would be unable to work for the first week or two, and because he is self-employed he may not be able to work at all; and as noted above he would be separated from his daily and weekly routine and support system, as well as in the company of people who are not committed to sobriety and at least some of whom are using alcohol and illegal drugs. It is counsel's understanding that home confinement is intended to serve as a substitute for incarceration and that it would be difficult, if not impossible, for Mr. Vargo to continue the same meeting, work and family visitation schedule.

constructed routine. And incarceration for a matter of months will not serve to deter future criminal conduct by, or protect the public from further crimes by, Mr. Vargo or anyone else contemplating crimes similar to his; only sobriety will do so. Finally, Mr. Vargo does not require education or treatment which can be best provided in a prison, he has access to the help he needs in the community at a cost far less than incarceration.

*Third Factor*. The Court has the authority in this case to impose a sentence of probation, home confinement, community confinement or incarceration. The principle of parsimony should be a polestar in sentencing.

> The principle of parsimony, or the concept of the least restrictive appropriate alternative, is equally relevant to sanctions. In terms of both humane treatment of offenders and economy in public expenditure, law reform bodies . . . . have consistently urged the adoption of the least restrictive alternative policies.

U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Intermediate Sanctions in Sentencing Guidelines* p. 52.

*Fourth Factor*. In Zone A the Sentencing Commission allows for a sentence of probation, in Zone B "the Court may impose probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention." U.S.S.G. §5B1.1(a)(1) and (2) and PSIR 92.

*Fifth Factor*. The United States Probation Office did not identify any relevant policy statement and the United states Attorney has not filed a Position With Respect to Sentencing Factors in which it identified one.

*Sixth Factor*. There are no other defendants in this case to whom to compare the defendant. Within the Third Circuit in 2020, 42.6 percent of defendants were sentenced pursuant to U.S.S.G. § 2B1.1 (Fraud, Theft and Embezzlement) were sentenced within the Guideline Range, 23.4% benefited from a Government sponsored downward departure, and 33% were granted a variance. Thus, nearly three-fifths of defendants subject to the 2B1.1 guideline were sentenced below the applicable guideline range. United States Sentencing Commission, *Statistical Information Packet Fiscal Year 2020 Third Circuit*, Table 10. Neither Mr. Vargo nor this case presents a circumstance where he should be treated differently than the majority of other defendants in substantially similar circumstances.

*Seventh Factor*. There is no restitution due in this case.

WHEREFORE, for the foregoing reasons, the Court should sentence Mr. Vargo to a period of probation with conditions, including continuing sobriety and treatment, as well as community service. If the Court determines incarceration is a necessary component of any sentence, Mr. Vargo requests the Court impose one day in the custody of the United States Marshal to be followed by a period of Supervised Release with conditions, including those outlined above.

Dated: July 16, 2021                                      Respectfully Submitted,

                                                          /s/ Chris Capozzi
                                                          _____
                                                          Counsel for the Defendant
                                                          100 Ross Street, Suite 340
                                                          Pittsburgh, PA 15219
                                                          Tel: 412-471-1648
                                                          Fax: 412-592-0340

cc:     All ECF Registered Counsel of Record